IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RACHEL CHILDRESS,<br>  Plaintiff<br><br>v.<br><br>GATEWAY CHURCH<br>  Defendant | §<br>§<br>§<br>§<br>§  NO. _____<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Rachel Childress and files this her Original Complaint against Gateway Church and alleges as follows:

### A. NATURE OF COMPLAINT

This is an action instituted pursuant to alleged violations of the Plaintiff's rights under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, et seq, Americans with Disabilities Act (the "ADA") and under Texas Labor Code § 21.051 to remedy acts of employment discrimination perpetrated against her by Defendant Gateway Church ("Gateway"). Plaintiff contends that Gateway's employees discriminated against her because of her sex on more than one occasion when they subjected her to a hostile work environment as a result of ongoing harassment and discrimination based on her sex/gender from her supervisor and those above him, and she faced retaliation due to her complaints of them. From nearly the beginning of her employment at Gateway, Plaintiff was denied employment opportunities and promotions with Gateway due to her gender. She also was subjected to repeated harassment and discrimination from her supervisors. Plaintiff's complaints about the harassment and disparate treatment that she was experiencing in her role as an Administrative Assistant were answered with retaliation and ultimately termination.

1

## B.  PARTIES

1. Plaintiff, Rachel Childress, is an individual who is a citizen of the State of Texas.

2. Defendant, Gateway Church., is a non-profit corporation organized in Texas and doing business in Texas.  Defendant may be served by delivering a copy of the summons and of the complaint to Defendant's registered agent, David Middlebrook at 611 S. Main St., Suite 500, Grapevine, TX  76051.

## C.  JURISDICTION and VENUE

3. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)2 because a substantial part of the events or omissions giving rise to this claim occurred in this district and pursuant to 42 U.S.C. Section 2000e-5(f)(3) as Plaintiff was employed at Gateway Church in North Richland Hills, Texas, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district

## D.  FACTUAL BACKGROUND

*a. Plaintiff's Employment with Defendant.*

5. Ms. Childress is a female.  Ms. Childress began her employment with Gateway Church in North Richland Hills, Texas ("NRH") in May of 2018 as a temporary Administrative Assistant reporting to Pastor Al Pearson, Member Services (" Pastor Pearson") making $15.00 per hour.  She became a full-time employee with Gateway as an Administrative Assistant  to  Associate Pastor Kemtal Glasgow (then-Associate Pastor at NRH, but now promoted to Frisco, TX Campus Pastor), CARE, Outreach, and Central Services  (" Pastor Glasgow").  Ms. Childress took a pay decrease to $14.42 per hour; she challenged the decrease, but Human Resources ("HR") told her it was

because of health benefits. At all times of her employment with Gateway, Ms. Childress was an hourly employee who had to clock in and out and had no decision-making ability.

6. When Ms. Childress began working at Gateway in May of 2018, she had just gotten out of treatment for cancer and bone marrow treatment. She reported to Pastor Pearson. Ms. Childress was subjected to ongoing disparaging comments about her appearance and unwanted romantic advances from Pastor Pearson[1] while working for him. Pastor Pearson told Ms. Childress that God gave her cancer to teach her a lesson (May 2018), he repeatedly asked Ms. Childress to take off her wig (as her hair was growing back from cancer treatments) (June – December 2018) and urged her to stop wearing a wig and just go bald (said in front of Crystal Ramon, Administrative Assistant, during July 2018). He made comments about Ms. Childress's appearance and how good she smelled and asked if she was dating anyone (December 2018). Pastor Pearson also bought Ms. Childress gifts (December 2018). Pastor Pearson also forced Ms. Childress to be alone with him in his office with the doors shut and blinds closed to discuss personal, non-work-related matters. Pastor Pearson, after Ms. Childress had been employed for one month, during their weekly oversight meetings, began to complain to Ms. Childress about his marriage and his wife when the two of them were alone at these meetings which made Ms. Childress very uncomfortable.

7. Ms. Childress reported Pastor Pearson's behavior in August 2018 to Pastor Glasgow. Pastor Glasgow told Ms. Childress that she was not to be alone with Pastor Pearson.

8. In February 2019, Glasgow asked Ms. Childress to apply for an open "Care Pastor" position which would have meant a significant pay increase and increased responsibility for Ms. Childress since she was working as an Administrative Assistant. Ms. Childress interviewed for the position with Pastor Stokes Collins, NRH Campus Pastor ("Pastor Collins"), Pastor Wendell

---

[1] Pearson was and, on information and belief, is still married.

DePrang, Equip, NRH Campus Coordinator ("Pastor DePrang"), Pastor Lorena Valle, Associate Pastor of NRH, Alicia Osgood, NRH Campus Coordinator, and Pastor Glasgow. During the course of the interview, Pastor Collins and Pastor DePrang informed Ms. Childress that while she was more than qualified for the position, they were looking to hire a man for the position because "our congregation responds better to men." Subsequent to the interview, Alph Samuels (a male) was chosen for the job.

9. During March 2019, Pastor Glasgow was promoted, and Pastor Kyle Fox ("Pastor Fox") replaced him. Pastor Collins, who was Pastor Fox's immediate supervisor asked Ms. Childress about the issues with Pastor Pearson and decided that Ms. Childress and Pastor Pearson should both report to Pastor Fox.

10. In June 2019, Ms. Childress was invited by Pastor Glasgow to interview for Associate Pastor of Groups at the Frisco, Texas location of Gateway. Ms. Childress was interviewed by Pastor Adana Wilson, Pastor of Groups at Frisco, who informed her that while Ms. Childress was well qualified for the position, the Frisco team wanted to hire a male for the position. Subsequently, Brad Stahl (a male) was hired.

11. In August 2019, Gateway added more responsibilities to Ms. Childress's job as Administrative Assistant. Ms. Childress asked Pastor Fox if she was going to receive an increase in her salary and he told her that she was not getting a raise. Pastor Fox further stated to her that she should view the added responsibility as an "honor."

12. In late September 2019, even with the knowledge of Pastor Pearson's behavior towards Ms. Childress, Pastor Collins made the decision to have Ms. Childress report to Pastor Pearson again. When Ms. Childress objected, Collins told her that Pastor Pearson had "changed" and that she needed to give him another chance.

4

13.     On or around October 7, 2019, Ms. Childress complained to Pastor Fox about having to report to Pastor Pearson. Pastor Fox told her that she was being insubordinate because she "would not let it go." Patricia Tribett, Pastor Collins' administrative assistant told Ms. Childress that Pastor Collins did not believe her accusations. Ms. Childress told Tribett that then she would start recording her interactions with Pastor Pearson. On or around October 21, 2019, Ms. Childress was pulled into a meeting with Pastors Fox, Collins, Pearson, and Virginia Agata, Associate Director of HR for Gateway. Ms. Childress was presented with a written warning by the Pastors about how Ms. Childress was challenging authority. Pastor Collins confronted Ms. Childress about whether she was in fact recording her interactions with Pastor Pearson as she had told Patricia Tribett, she was going to do.

14.     Throughout December of 2019, Ms. Childress, forced to work directly with Pastor Pearson, was again subjected to multiple weekly one on one meetings with Pastor Pearson which included Pastor Pearson asking questions about Ms. Childress' personal life, making inappropriate remarks, and attempting to physically touch her. Specifically, in one of these meetings, Pastor Pearson made a physical advance on Ms. Childress and talked to her about "love languages" and how the two of them could do physical touch in his office and he could be her spiritual mentor. Ms. Childress rejected Pastor Pearson's advances and told him she was uncomfortable with him. This continued until Ms. Childress was out on FMLA with a medical flare-up from January 2020 to March 2020.

15.     Upon her return to work in March of 2020, Ms. Childress met with Pastor Byron Copeland, Executive Campus Pastor over all campus pastors and told him what she was experiencing. Pastor Copeland sympathized with her but did nothing. Pastor Copeland even told her that Pastor Pearson was the worst manager at Gateway and that he had a bad reputation with the staff. After this

meeting, Ms. Childress contacted Pastor Collins again and asked to be moved out from under Pastor Pearson. Pastor Collins replied that Ms. Childress was being insubordinate and said he would not move her due to Covid. Pastor Collins further stated that he did not believe her and that he was going to inform HR of Ms. Childress's insubordinate attitude toward him (Collins); that she was challenging his behavior and not submitting to his leadership.

16. In April 2020, Ms. Childress met with Virginia Agada and Rebecca Wilson (both in HR) to report the multiple incidents with Pastor Pearson. Nothing changed after this meeting.

17. On March 9, 2021, Pastor Pearson cornered Ms. Childress during a worship service at NRH and started talking about the story of the woman at the well found in the New Testament. Pastor Pearson said that Jesus never forgave this woman. Ms. Childress informed him that she did not agree with his comments about forgiveness and asked to "change the subject." Pastor Pearson replied that he wanted to make sure he was not "casting his pearls before swine." Ms. Childress moved out away from Pastor Pearson and went to a different area.

18. Ms. Childress was working a weekend rotation at the NRH campus with Pastor Pearson on March 21, 2021. During lunch Pastor Pearson was seated next to Ms. Childress and turned and said to her, "Do you know what opened pandora's box for the MeToo movement?" Ms. Childress responded, "I have no idea what you are talking about." Pastor Pearson said, "Do you know where the #Metoo movement started? " Childress stated again, "I have no idea." He then said, "It all started with the false accusations against Bill Cosby. Then that opened pandora's box for all the false allegations." Again, feeling uncomfortable, Ms. Childress then switched the subject to something else. Then Pastor Pearson got up and moved.

19. Ms. Childress contacted Pastor Fox (also Pearson's manager) and asked to meet with him. She met with him on March 26, 2021 and told Pastor Fox that she did not feel safe or comfortable

working with or being around Pastor Pearson and requested to be moved somewhere else. Pastor Fox instructed Ms. Childress to write down her concerns and exactly what occurred and to continue working as normal.

20. On March 30, 2021, Ms. Childress, Pastor Pearson, and Monique Butler were having a meeting. Pastor Pearson asked Ms. Butler to leave the meeting which left Ms. Childress alone with Pastor Pearson. Pastor Pearson then gave Ms. Childress a book on repentance and forgiveness that he said he bought for her. Ms. Childress got up and exited the room without taking the book. She followed up with Pastor Fox and told him that Pastor Pearson was still trying to meet with her alone and that she did not feel comfortable or safe with him. Pastor Fox instructed her to go home and finish the day working remotely.

21. April 1, 2021, Ms. Childress again submitted her written concerns to Pastor Collins, Pastor Fox, and Virginia Agada, asking again to be moved because she did not feel safe or comfortable reporting to or working with Pastor Pearson. Ms. Childress was told by Virginia Agata that she was going to have to meet with Pastor Pearson face-to-face and read her concerns to him in a "Reconciliation Meeting", but in the meantime, she would report to Pastor Fox. She was also informed by HR that she would only be eligible to apply for a new position within Gateway after the completion of the Reconciliation Meeting. HR also informed her that Gateway would not move her without her applying for a position where she desired to transfer.

22. On April 20, 2021, the in-person "Reconciliation Meeting" began with Ms. Childress, Pastor Pearson, Pastor Fox, and Virginia Agada (from HR) present in Paulette Gillespie's office.[2] Ms. Childress was instructed to read her complaints regarding Pastor Pearson out loud in front of him. He became hostile and verbally aggressive but admitted to Ms. Childress' allegations against

---

[2] Gillespie is the head of HR for Gateway.

7

him.  Ms. Childress left the meeting because she did not feel safe.  Ms. Childress was instructed to continue the meeting on April 27, 2021, and continue reading her accusations to Pastor Pearson. Pastor Pearson again became openly hostile and started scratching his head repeatedly with his "middle finger."  Ms. Childress again got up and left the room as none of the other people in attendance came to her defense.

23. In May of 2021, Ms. Childress again reported her hostile work environment to Virginia Agada, Associate Director of HR, Pastor Byron Copeland, Executive Campus Pastor, and Paulette Gillespie, HR Director[3] in an email.

24. After meeting with Pastor Collins, NRH Campus Pastor, Virginia Agada, and Si Alford, also an Associate Director HR, regarding her email on May 13, 2021, Pastor Copeland aggressively confronted Ms. Childress while they were at the Administrative Headquarters of Gateway.  Pastor Copeland backed Ms. Childress into a corner of the room they were in and threatened to fire her if she didn't shut up and stop stirring up drama.  Pastor Copeland subsequently sent her an apology via Slack later that evening.

25. On June 7, 2021, Pastor Collins, Si Alford, and Paulette Gillespie had a meeting with Ms. Childress to give her a "Probation & Employment Commitment[4]" document which is a "write-up." The complaints in the document focused on Ms. Childress's hostile workplace complaint (email) to HR and named Ms. Childress as the individual at fault rather than Pastor Pearson.  Ms. Childress refused to sign the document.

26. The following day, Ms. Childress went on FMLA leave for 6 weeks due to a medical flare-up.  However, during that time, Paulette Gillespie attempted to get Ms. Childress to either resign and receive 3 months' pay or sign the Probation document.  Ms. Childress notified Sara Bears,

---

[3] A true and correct copy of the email dated May 6,221 and emailed to Virginia Agada is attached as Exhibit 1.
[4] A true and correct copy of the Probation & Employment Commitment dated June 7, 2021 is attached as Exhibit 2.

Director of Compliance HR, of Gillespie's efforts. On June 24, 2021, Ms. Childress received a written apology for how she had been treated by Gateway via email and FedEx delivery. Gateway also agreed to pay for counseling. Ms. Childress replied requesting a written apology from Pastor Pearson and to be moved when she returned from FMLA.

27.     On July 19, 2021, Ms. Childress returned to work from FMLA leave; however, Pastor Fox placed her on administrative leave until a meeting scheduled for July 21 with HR. On July 21, 2021, Ms. Childress met with Pastor Collins, Pastor Fox, Virginia Agada, and Paulette Gillespie and was presented with her second "Probation & Employment Commitment" document.[5] Ms. Childress learned during the meeting that she would not be getting a written apology from Pastor Pearson because he had been terminated. Gillespie told Ms. Childress, that "It is your fault Pearson is gone, so there will be no apology from him." Gillespie further stated that Gateway was willing to pay six (6) months' severance payment to Ms. Childress if she will "resign today." Ms. Childress later learned that Gateway paid the equivalent of two (2) years' salary to Pastor Pearson in exchange for his signature on a non-disclosure agreement.

28.     Ms. Childress was in a car accident right after the July 21, 2021 meeting and suffered significant injuries and went out on FMLA for six (6) weeks. On July 29, 2021, Gateway agreed to pay for counseling for Ms. Childress to help recover from the harm done by Pastor Pearson.

29.     Ms. Childress returned to work at Gateway on September 7, 2021. That same day, she was terminated during a Zoom meeting with Pastor Collins, Si Alford, and Jeanne William, HR Coordinator, where she was presented with a "Separation Agreement" that offered 6 months' pay and benefits paid through April 2022. Ms. Childress was told by Pastor Collins during the call that "We have come to the place where we need to move on. We have reviewed the case, looked

---

[5] A true and correct copy of the Probation & Employment Commitment dated July 21, 2021 is attached as Exhibit 3.

at it, and we have made the decision to part ways. God has plans for you, God has plans for the campus, but we are just at a space where we feel those plans are going in two different directions."

30.     Ms. Childress learned later that Pastor Collins and Pastor Pearson were good friends.

31.     Gateway Church and its employees intentionally treated Ms. Childress in a manner that caused a hostile work environment for Ms. Childress. Additionally, the circumstances surrounding Gateway Church's termination of Ms. Childress are discriminatory and qualify as disparate treatment of Ms. Childress by Gateway Church. As such Gateway Church's actions violated Title VII of the Civil Rights Act of 1964 and the Texas Labor Code.

### E.  PROCEDURAL BACKGROUND

32.     On January 4, 2022, the Equal Employment Opportunity Commission ("EEOC") received Plaintiff's filed and signed Charge of Discrimination.[6] On October 31, 2022, the EEOC issued a "Notice of Right to Sue" letter to Plaintiff.[7]

### F.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

33.     A plaintiff has 300 days from the date of the incident to file a formal charge with the Equal Employment Opportunity Commission ("EEOC").[8] Plaintiff's employment with Gateway was terminated on September 7, 2021. Plaintiff had 300 days from then – until July 4, 2022 – to file her formal charge with the EEOC. Plaintiff timely filed hers on January 4, 2022.

34.     On October 31, 2022, the EEOC issued the Notice of Right to Sue Letter to Plaintiff, stating that Plaintiff had 90 days from the receipt of the notice to file her lawsuit against Defendant. If Plaintiff received the Notice of Right to Sue Letter on the date it was issued, Plaintiff had until

---

[6] A true and correct copy of the Charge of Discrimination filed with the EEOC by Plaintiff is attached and incorporated into Plaintiff's Original Complaint as Exhibit 4.
[7] A true and correct copy of the Notice of Right to Sue Letter from the EEOC is attached and incorporated into Plaintiff's Original Complaint as Exhibit 5.
[8] See 42 U.S.C § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B).

January 28, 2023, to file the lawsuit. Plaintiff has timely filed this present lawsuit prior to that date.

35. Plaintiff has exhausted all administrative remedies and all conditions precedent have occurred to allow Plaintiff to bring these causes of action against Defendant.

### G. COUNT ONE

**Sex-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq. as amended**

36. The foregoing paragraphs are realleged and incorporated by reference herein.

37. Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. Plaintiff was an employee within the meaning of Title VII. Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

38. Plaintiff is a female. Plaintiff began her employment with Gateway Church in North Richland Hills ("NRH") in April of 2018 as a part-time Administrative Assistant reporting to Pastor Al Pearson, a male. At all times, Plaintiff was an hourly employee with no decision-making capacity. Plaintiff was subjected to ongoing sexual harassment by Al Pearson of which Plaintiff's supervisors were aware and did nothing to actually address Plaintiff's concerns and

actually accused Plaintiff of being untruthful, causing the problems and going so far as to blame the Plaintiff for her harasser's termination. Further when Defendant eventually terminated Plaintiff's harasser, they paid him two-years of salary in a severance package.

39. Plaintiff's sex was the determining factor and/or a motivating factor in Defendant's actions.

40. As a direct, legal, and proximate result of the discrimination, Plaintiff has sustained economic damages to be proven at trial. As a result of Defendant's actions, Plaintiff suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

41. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.

42. Defendant is strictly liable for its employees' discriminatory conduct because they took tangible employment actions against Plaintiff that significantly altered Plaintiff's employment status.

43. Plaintiff is entitled to reasonable attorney's fees and costs of suit.

### H.  COUNT TWO

**Retaliation in Violation of Title VII of the Civil Rights Act of 1964,** *as amended*, **42 U.S.C. § 2000e-3(a)**

42. The foregoing paragraphs are realleged and incorporated by reference herein.

43. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

44. Plaintiff made informal and formal complaints to Defendant's agents and employees opposing Defendant's unlawful, discriminatory employment practices based on sex.

45. As a result of Plaintiff's complaints, Defendant's agents and employees took materially adverse actions against Plaintiff, including, but not limited to, issuing disciplinary warnings, such as counseling and coaching forms; threats of termination; reprimands by supervisors; and ultimately terminating the Plaintiff.

46. Defendant's adverse actions constituted retaliatory workplace harassment.

47. Defendant's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

48. As a direct, legal, and proximate result of Defendants' retaliation, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

49. Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

### I.  COUNT THREE

**Violation of Texas Labor Code**

50. The foregoing paragraphs are realleged and incorporated by reference herein.

51. Defendant is an employer as defined under Texas Labor Code § 21.002(8)a.

52. Plaintiff is an employee as defined under Texas Labor Code § 21.002(7).

53. Defendant's decision to pass over Ms. Childress for employment opportunities and force her to be subjected to sexual harassment and a hostile work environment and terminate Ms. Childress in retaliation of her complaints of them is a violation of Texas Labor Code §§ 21.051(1),(2) and 21.142.

54. Defendant committed an unlawful employment practice because it retaliated and discriminated against the Plaintiff and ultimately terminated the Plaintiff because she opposed a discriminatory practice and made ongoing complaints about how her supervisor was harassing her because of her sex in violation of Texas Labor Code § 21.055.

## J.  DAMAGES

55.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following damages:

   a. Plaintiff was discharged from employment with Defendant and was out of work between September 7, 2021, and November 8, 2021.

   b. Plaintiff seeks compensation for all lost wages and benefits, including loss of Social Security benefits.

   c. Plaintiff suffered mental anguish and emotional distress due to Gateway forcing her to continue to work in close association with her harasser, Al Pearson.

## K.  ATTORNEY'S FEES AND COSTS

56.     Plaintiff is entitled to an award of attorney's fees and costs under both Title VII, 42 U.S.C. 200e-5(k).

## L.  PRAYER

57.     For these reasons, Plaintiff asks for judgment against Defendant for the following:

   a. For a declaration that Defendant's actions, policies, and practices as alleged herein are unlawful;

   b. For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions, in an amount to be proven at trial;

   c. For damages for Plaintiff's mental anguish and emotional distress and suffering, in an amount to be determined at trial;

   d. For punitive damages in an amount to be determined at trial;

   e. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

f.  For reasonable attorney's' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), and other laws; and

g.  For such other and further relief as this Court deems just and proper.

Dated: January 22, 2023                     Respectfully submitted,

*/s/ Debra Edmondson*
**Debra Edmondson**
Texas State Bar No. 24045824
debra@edmondsonlawfirm.com

**The Edmondson Law Firm, P.L.L.C.**
P.O. Box 92801
325 Miron Dr., Ste. 100
Southlake, TX 76092
Telephone: (817) 416-5291

**ATTORNEY FOR PLAINTIFF**